**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**SANDY CATALA GRACIANI**                    CIVIL ACTION

**VERSUS**                                   NO:        21-01612

**COMMISSIONER OF SOCIAL SECURITY**          SECTION: "R" (4)

## REPORT AND RECOMMENDATION

**I.    Introduction**

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to **Title 42 U.S.C. § 405(g)**. The Commissioner denied Sandy Catala Graciani's claim for Disability Insurance Benefits and Title XVI Supplemental Security Income benefits.    42 U.S.C. § 423.

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

**II.    Factual Summary**

Sandy Catala Graciani ("Graciani") was a 48-year-old female on the alleged onset date and 53 years old on the date of the ALJ's decision.    She completed two years of college and reported past work as an operator in manufacturing. Rec. doc. 15-1, Tr. 58, 309.    Graciani filed applications for Title II Social Security Disability and Title XVI Supplemental Security Income benefits alleging disability beginning on August 15, 2016, due to anxiety, depression, and fibromyalgia. Rec. doc. 1.    Plaintiff's applications were denied initially on February 28, 2019,

and again upon reconsideration on September 3, 2019.   Rec. doc. 16, Tr 168. Plaintiff and a vocational expert subsequently testified at a hearing held on August 10, 2020. *Id.* at. Tr 52-64.

After the hearing, the ALJ issued a decision on September 9, 2020, concluding that Graciani was not disabled within the meaning of the applicable regulations.   ( Rec. doc. 15-2, Tr. 11-16). The ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018 and had not engaged in substantial gainful activity since August 15, 2016, the alleged onset date. Rec. doc. 15-2. Tr 33.

The ALJ determined Plaintiff has the severe impairments of fibromyalgia, osteoarthritis, degenerative joint disease, and degenerative disc disease, none of which meet or equal a listing set forth in 20 CFR Part 404, Subpart P, Appendix 1.    *Id.* at. T 34-35. The ALJ found the Plaintiff has the residual functional capacity ("RFC") to perform a range of light work with the following limitations:

> [Plaintiff] can lift 20 pounds occasionally and 10 pounds frequently; stand and walk for 4 hours of an 8-hour day for 30 minutes at a time; and sit for 6 hours for 2 hours at a time. She can occasionally stoop and climb. She can perform no crouch, kneeling or crawling. Push and pull less than 10 pounds with the left lower extremity. She can perform work with no heights or hazardous machines and requires a cane on uneven ground. Additionally, [Plaintiff] can occasionally reach overhead.   *Id.* at. Tr 35.

The ALJ determined Plaintiff was not capable of performing her past relevant work as a hand packager. Rec. doc. 15-2. at. Tr 39. However, the ALJ determined Plaintiff could perform other work in the national economy, such as a cashier, office helper, and counter rental clerk. *Id.* at. Tr. 40. Thus, the ALJ found that Plaintiff was not disabled.    *Id.* at Tr. 40-41.

On May 27, 2021, the Appeals Council denied Plaintiff's request for review, leaving the ALJ decision as the final agency decision. Rec. doc. 15-1, Tr. 1-4.   Graciani filed the subject

appeal challenging the ALJ's decision.    On review, Graciani asserts one error:

> That the ALJ RFC determination is not supported by substantial evidence because he failed to properly evaluate the medical opinions of Drs. Fowler and Espinoza.

## III.    <u>Standard of Review</u>

The role of the Court on judicial review under Title 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.    *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).    The Court may not re-weigh the evidence, try issues *de novo* or substitute its judgment for that of the Secretary.    *See Id.*    If supported by substantial evidence, then the Secretary's findings are conclusive and must be affirmed.    *Richardson v. Perales*, 402 U.S. 389, 390 (1971).    *See also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981).

"Substantial evidence is such relevant evidence as a reasonable mind might accept   to support a conclusion."    *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).    "It is more than a mere scintilla and less than a preponderance."    *Id.*    It must do more than create a suspicion of the existence of the fact to be established, and no "substantial evidence" will be found only when there is a "conspicuous absence of credible choices" or "no contrary medical evidence."    *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted   . . . for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423 (d)(1)(A).    Section 423(d)(3) of the Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process. The rules governing the steps of this evaluation process are: (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

The burden of proof is on the claimant for the first four steps but shifts to the Secretary at step five. *See Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

## IV.   **Proper Weight to treating Physician Medical & Mental Assessments**

Graciani contends that the ALJ's RFC determination is not supported by substantial evidence as he failed to properly evaluate the opinion of Plaintiff's treating provider, Dr. Espinoza and the consultative examiner, Dr. Fowler. Graciani contends that the rules changed for claims filed after March 27, 2017, which modified the rules for evaluating opinion evidence.

The Commissioner contends that the ALJ properly considered the February 21, 2019, consultative examination report from Dr. William E. Fowler, Ph.D. Rec.doc. 22. The

Commissioner contends that the ALJ committed no error, harmless or otherwise, in his consideration of Dr. Fowler's February 21, 2019, consultative examination report and Dr. Espinoza's February 24, 2020, checkmark form. *Id.* at. P. 2.   The Commissioner pointed to the ALJ's acknowledgement that he could not longer defer or give any weight including controlling weight to any prior administrative medical findings or opinion per the 2017 revisions to the rules. Rec. doc. 22.

On January 18, 2017, the agency published revisions to its regulations regarding the evaluation of medical evidence.   See *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)).   The revised regulations became effective on March 27, 2017. *Id.*   The revised regulations significantly altered how the agency considers medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017.   See 20 C.F.R. §§ 404.1520c and 416.920c (2017).   As an initial matter, the regulations no longer use the term "treating source;" instead, they use the phrase "your medical source(s)" to refer to whichever medical sources a claimant chooses to use.   See 20 C.F.R. §§ 404.1520c and 416.920c.

More importantly, following notice and comment, the Commissioner chose not to retain the "treating source rule" that could require deference to treating source opinion evidence.   82 Fed. Reg. at 5853.   As the agency explained, since adoption of the "treating source rule" in 1991, healthcare delivery has changed in significant ways, and the agency's adjudicative experience has shown that the source of an opinion is no longer the most important factor for determining the persuasiveness of the opinion.   *Id.*

After detailing Graciani's medical history and findings, subjective allegations, and work

history, the ALJ noted that he could not defer or give any specific evidentiary weight or controlling weight to any prior administrative medical finding or opinion. Rec. doc. 15-2, Tr. 38.    He thereafter found the consultative examinations of July 2015 and February 7, 2019, persuasive.

He also found the February 21, 2019, psychological consultative examination persuasive but not Dr. Espinoza's February 24, 2020, limitation findings.    He noted that Dr. Espinoza's findings which had lifting restrictions inconsistent with physical examination results.    He noted that Graciani had no problems with spinal range of motion; intact muscle tone and bulk, with intact sensation.    He also noted that Graciani used a cane but that her cane use was only on uneven surfaces.    Rec. doc. 15-2; Tr. 39.

At issue is the weight the ALJ should assign to Dr. Espinoza's treating source opinion and Dr. Fowler's psychological consultive opinion.    Specially, Graciani contends that the ALJ did not properly incorporate Dr. Espinoza and Dr. Fowler's limitations into the RFC.    According to Graciani, because these opinions were not incorporated, the hypothetical to the vocational expert was incomplete.

The revised regulations alter how the agency considers medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017. See 20 C.F.R. § 416.920c (2017). When evaluating the opinion evidence for claims filed on or after March 27, 2017, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017). Rather, the ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) while considering five regulatory factors:(1) supportability; (2) consistency; (3) relationship with the

claimant, including the (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors. 20 C.F.R. § 416.920c(a)-(c) (2017).

Of the five factors, the ALJ will explain how he considered the factors of supportability and consistency, which are the two most important factors in determining persuasiveness. 20 C.F.R. § 416.920c(b)(2) (2017). The revised regulations clarify how evidence from Federal and State agency medical and psychological consultants—now deemed prior administrative medical finding(s) (except for the ultimate determination about disability)—is considered. The regulations provide that while ALJs are not required to adopt prior administrative medical findings, they must still consider this evidence in accordance with the Commissioner's regulations as appropriate, inasmuch as Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation. 20 C.F.R. § 416.913a (b)(1) (2017) (citing §§ 416.920b, 416.920c, 416.927). Importantly, the regulations deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3), (2017).

The Commissioner "will explain how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings". The ALJ "may, but [is] not required to, explain how they considered the factors in (c)(3)-(5) when articulating how they consider medical opinions and prior administrative medical findings." *Id.* 20 C.F.R. § 404.1520c(b)(2).

Supportability means the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1); see also Revisions to Rules, 82 Fed. Reg. at 5853 (defining supportability as "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation"). Consistency is an external check that references evidence from other medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); see also Revisions to Rules, 82 Fed. Reg. at 5853 (defining consistency as "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim").

### 1.   Dr. Espinoza's Opinion

The ALJ found Dr. Espinoza's opinion not persuasive.    The ALJ found that:

> He opined that secondary to the claimant's fibromyalgia and hypertension, the claimant could lift less and carry than 10 pounds occasionally, and rarely lift 10 pounds.   He opined the claimant could occasionally carry up to 20 pounds.   Dr. Espinoza found the claimant would be off task 25% of the workday and miss 4 days per month.   This opinion is grossly inconsistent with physical examinations that showed some impairment but no problems with spinal range of motion; intact muscle tone and bulk; intact sensation and cane use but only on uneven surfaces.   Rec. doc. 15-2, Tr. 39

Although the ALJ did not use the word supportability, his opinion finds that the lifting and carrying restrictions opined by Dr. Espinoza was not supported by other evidence.   In so doing he found that the opinion did not support and was inconsistent with the medical records and physical examination in the record.   For example, a review of the medical records referenced in the opinion considered her medical records from DePaul Community Health Centers which details the conditions, medications, treatment, and examinations of Ms. Graciani. Rec. doc. 16-1,   Tr. 715-740)

A review of the medical records support the ALJ's finding that these records did not support the lifting or carrying restrictions Dr. Espinoza found. There is absolutely no reference in her examinations where her treating physician found limitations of the spine. Specifically, the Dr. Espinonza's medical record indicate that on examination he found that Graciani had full range of motion in the upper and lower extremities, strength equal bilateral, no synovitis noted, grip strength was good.   Rec. doc. 16, Tr. 684, 688, 690, 693, 696, 698, 702, 704, Exhibit B19F.   Dr. Espinoza completed a form entitled "Treating Source Statement-physical Conditions" largely a   checkbox opinion form, but which provided no further explanation.   Rec. doc. 16-3, Tr. 786-789.   *See Haynes v. Saul*, 2020 WL 9720061 ( E.D. La.   Jan. 8, 2020)(Where court found that treating physicians check box form provided little if any corroboration of his assertions; that his opinions were conclusory and entitled to no weight). The Court finds that the ALJ's decision finding that Dr. Espinoza's limitation restrictions is not consistent with his treating records is supported by substantial evidence.

Also, the Court notes that while the plaintiff complains that the ALJ did not explain the supportability requirement, Garcini has not provided evidence that her functional restrictions as determined by Dr. Espinoza were in fact supported by the record.   Further there is no legal requirement that the ALJ explain the supportability requirement. See 20 C.F.R. § 404.1520c(b)(2) (noting articulation requirement for supportability and consistency factors, and providing that ALJs "may, **but are not required** to, explain how [they] considered" other § 404.1520c(b) factors).   Therefore, the ALJ's failure to explain that he considered supportability by pointing to the specific pages of the record, does not constitute error and nor does it affect the decision because it is based on substantial evidence.

The Court also notes that the medical consultant who the ALJ relied upon contrasted with the findings of Dr. Espinoza.   The ALJ noted that she could move on and off the table with difficulty and squat, bend and stop with difficulty secondary to pain and stiffness. Her grip strength was 5/5 and he noted swelling of the 2nd MCP joint.   See Rec. doc.   16, Tr. 651 Exhibit B10F. The evidence of record does not point to greater functional limitations, beyond those the ALJ specified. The ALJ's assessment of the functional limitations and conclusion that Dr, Epinoza's opinion was inconsistent is supported by substantial evidence.

### 2.    Dr. Fowler's Opinion

Next Graciani complains that the ALJ 's evaluation of Dr. Fowler's opinion was lacking also. Rec. doc. 21.   She alleges that the ALJ's finding as to Dr. Fowler is not consistent with or supported by evidence of consistently normal mental status and longitudinally stable condition. *Id.* Graciani contends that the ALJ's evaluation of Dr. Fowler's opinion falls short of the standard required by the new rule because he relied on one record dated March 11, 2020.

Specifically, the ALJ found that one piece of evidence was enough to conclude that Dr. Fowler's whole opinion was not persuasive.   *Id.* at. 15.   Graciani also complains that the ALJ improperly evaluated the consistency factor because he only focused on the mental status examination rather than the other medical sources such as symptoms, history testing, diagnosis, medication, and frequency of therapy. *Id.* 15. Graciani contends that Dr. Fowler's opinion is internally consistent with results of his consultative examination. *Id.*   Finally, Graciani contends that the new regulations do not remove the   requirement for the ALJ to articulate his findings regarding the supportability factor. *Id.* at. 16.

The Commissioner contends that the ALJ explained that he could not defer or give specific

evidentiary weight including controlling weight.    Rec. doc. 22.    The Commissioner contends that the ALJ considered the February 21, 2019, examination report and concluded that Dr. Fowler's opinion was not persuasive.

In the opinion, the ALJ noted that the February 21, 2019 report of Dr. Fowler, the consultative examiner was not persuasive.    Rec. doc. 15-2 at. Tr. 38.    He noted that Dr. Fowler opined that the claimant's depression impairs her ability to focus, retain information and persist. *Id.*    He further noted that Dr. Fowler opined that due to Graciani's depression she does not appear to be able to carry out typical workplace tasks or adapt to stressors. *Id.*    However, the ALJ found that this consultative opinion is not consistent with or supported by evidence of consistently normal mental status and longitudinally stable condition. *Id.*

In support of his opinion, the ALJ relied on March 11, 2020 report by Dr. Hansen, a clinical psychologist with DePaul Community Health Centers who found that Graciani had Moderately Severe Depression, with no anxiety. Rec. doc. 16-6.    On this visit Graciani denied anxiety, depressed mood, and suicidal thoughts.    *Id.* at. Tr. 909.    Dr. Hansen noted that Graciani's appearance was well-groomed, with normal body movements, appropriate affect, with good attention. *Id.* Dr. Hansen noted that she was cooperative, judgment was good, and she was oriented to time place and person. Id at. 910.    Dr. Hansen did not note any perceptual disorder with normal range psychomotor speech, thought content and process. *Id.* at. 910.

The question is whether the ALJ properly evaluated the opinions of Dr. Fowler and Dr. Hansen when he found that there was no more than mild limitations.    First the evidence shows that    Dr. Fowler's evaluation occurred in February 2019 and Dr. Hansen's evaluation occurred in March 2020.    A review of their reports shows that just over a year had passed from the original

psychological consultative exam and her condition according to Dr. Hansen had improved to Moderately Severe Depression when she presented to him.   Additionally, the record shows that when Graciani presented to Dr. Fowler complaining of anxiety he even found that   she did not provide a description consistent with the clinical definition of anxiety.   Rec. doc. 16, Tr. 659. This is consistent with Dr. Hansen's conclusion that she actually denied anxiety in March 2020. Rec. doc. 16-6. Tr. 909.

Regarding the degree of depression that Dr. Fowler found existed, the ALJ found that Dr. Hansen's, assessment was persuasive rather than Dr. Fowler. The record shows that Graciani reported seeing shadows during her visit with Dr. Fowler, but Dr. Hansen and Dr. Holloway found that her account of shadows was not evidence of psychotic features. (Rec. doc. 15-4, Tr.77.93)

Again, here is no legal requirement that the ALJ explain the supportability requirement. See 20 C.F.R. § 404.1520c(b)(2) (noting articulation requirement for supportability and consistency factors, and providing that ALJs "may, but are not required to, explain how [they] considered" other § 404.1520c(b) factors). In this case, the ALJ in his opinion pointed to his reliance on Dr. Hansen report to support his opinion.   The evidence suggests that her mental status improved over time.   For example, in February 2019 her attention was impaired but in March 2020 it was good. In February 2019 she was preoccupied with her pain but in March 2020 her thought content was unremarkable. The ALJ's assessment of Graciani's limitations in the area of concentration, persistence or maintaining pace and adopting or managing oneself is substantially supported by the record and the claimant fails to present any evidence other than Fowler to the contrary.

The Court further observes that the ALJ's decision to not incorporate Dr. Espinoza and Dr.

Fowler's opined limitations into the RFC did not result an incomplete hypothetical such that the opinion is based upon substantial evidence.

## V.    <u>Recommendation</u>

**IT IS RECOMMENDED** that the ALJ's decision denying Sandy Graciani claim for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income Benefits be **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a Magistrate Judge's Report and Recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court, provided that the party has been served with notice that such consequences will result from a failure to object.    *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 9th day of August 2022.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**